Robert A. Julian (SBN 88469)
Cecily A. Dumas (SBN 111449)
BAKER & HOSTETLER LLP
1160 Battery Street, Suite 100
San Francisco, CA 94111
Telephone:    628.208.6434
Facsimile:    310.820.8859
Email: rjulian@bakerlaw.com
Email: cdumas@bakerlaw.com

Eric E. Sagerman (SBN 155496)
Lauren T. Attard (SBN 320898)
BAKER & HOSTETLER LLP
11601 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025-0509
Telephone:   310.442.8875
Facsimile:   310.820.8859
Email: esagerman@bakerlaw.com
Email: lattard@bakerlaw.com

*Counsel for the Official
Committee of Tort Claimants*

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:** | Bankruptcy Case No. 19-30088 (DM) |
| **PG&E CORPORATION,** | |
| **- and -** | Chapter 11 (Lead Case) (Jointly Administered) |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | |
| **Debtors.** | **FIRST INTERIM APPLICATION OF BAKER & HOSTETLER LLP FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD FEBRUARY 15, 2019 THROUGH MAY 31, 2019** |
| ☐ Affects PG&E Corporation | |
| ☐ Affects Pacific Gas and Electric Company | Date: TBD Time: TBD |
| ■ Affects both Debtors | |
| *All papers shall be filed in the Lead Case, No. 19-30088 (DM).* | |
| | Objection Date: August 5, 2019 |

-1-

**COVERSHEET FOR FIRST INTERIM APPLICATION OF THE LAW FIRM OF BAKER & HOSTETLER LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF TORT CLAIMANTS FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD FEBRUARY 15, 2019 THROUGH MAY 31, 2019**

| | |
|---|---|
| Name of Applicant: | Baker & Hostetler LLP |
| Name of Client: | Official Committee of Tort Claimants |
| Time period covered by this application: | 2/15/2019-5/31/2019 |
| Total fees sought this period: | $7,190,851.00 |
| Total expenses sought this period: | $233,430.74 |
| Petition Date: | 1/29/2019 |
| Retention Date: | *nunc pro tunc* to 1/29/2019 |
| Date of order approving employment | 4/10/2019 |
| Total compensation approved by interim order to date: | $0 |
| Total expenses approved by interim order to date: | $0 |
| Total allowed compensation paid to date: | $0 |
| Total allowed expenses paid to date: | $0 |
| Blended rate in this application for all attorneys | $791.39 |
| Blended rate in this application for all timekeepers | $760.04 |
| Compensation sought in this application already paid pursuant to a monthly compensation order but not yet allowed | $2,218,720.00 |
| Expenses sought in this application already paid pursuant to a monthly compensation order but not yet allowed | $100,492.11 |
| Number of professionals included in this application | 62 |
| If applicable, number of professionals in this application not included in staffing plan approved by client | N/A |
| If applicable, difference between fees/expenses budgeted and compensation sought for this period | Actual: $7,424,281.74 Budget Range: $5,814,000.00 - $8,375,200.00 |
| Number of professionals billing fewer than 15 hours to the case during the period | 18 |
| Are any rates higher than those approved or disclosed at retention? If yes, calculate and disclose the total compensation sought in this application using the rates originally disclosed in the retention application | No |

Case: 19-30088   Doc# 2995   Filed: 07/15/19   Entered: 07/15/19 17:38:11   Page 2 of 43

# SUMMARY OF FIRST INTERIM FEE APPLICATION

| Date Filed | Period Covered | Total Compensation and Expenses for Period Covered | | Total Amount Previously Requested with Monthly Fee Statement | | Total Amount Paid to Date | | Holdback Fees, Unpaid Fees and Expenses Requested |
|---|---|---|---|---|---|---|---|---|
| | | Fees | Expenses | Fees @80% | Expenses @100% | Fees | Expenses | Fees |
| 4/16/19 (DE 1478) | 2/15/19-2/28/19 | $858,819.50 | $36,785.28 | $687,055.60 | $36,785.28 | $687,055.60 | $36,785.28 | $171,763.90 |
| 5/17/19 (DE 2063) | 3/1/19-3/31/19 | $1,914,580.50 | $63,706.83 | $1,531,664.40 | $63,706.83 | $1,531,664.40 | $63,706.83 | $382,916.10 |
| 5/31/19 (DE 2295) | 4/1/19-4/30/19 | $1,925,513.75 | $62,921.10 | $1,540,411.00 | $62,921.10 | $0 | $0 | $1,988,434.85 |
| 7/1/19 (DE 2798) | 5/1/19-5/31/19 | $2,491,937.25 | $70,017.53 | $1,993,549.80 | $70,017.53 | $0 | $0 | $2,561,954.78 |
| **Total for First Interim Fee Application** | | **$7,190,851.00** | **$233,430.74** | **$3,759,131.00** | **$233,430.74** | **$2,218,720.00** | **$100,492.11** | **$5,105,069.63** |

    <u>Objections to Monthly Fee Statements</u>:  No objections have been filed regarding the First, Second or Third Monthly Fee Statements.  The deadline for objections to the Fourth Monthly Fee Statement is July 22, 2019.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

-3-

TO THE HONORABLE DENNIS MONTALI,
UNITED STATES BANKRUPTCY JUDGE

Baker & Hostetler LLP ("**Baker**" or "**Applicant**"), counsel to the Official Committee of Tort Claimants ("**TCC**") appointed in the above-captioned voluntary Chapter 11 bankruptcy cases (the "**Bankruptcy Cases**"), hereby submits its *First Interim Application for Allowance and Payment of Compensation and Reimbursement of Expenses for the Period February 15, 2019 through May 31, 2019* (the "**Application**") seeking entry of an order, on an interim basis, pursuant to sections 330(a) and 331 of title 11, United States Code (the "**Bankruptcy Code**"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rule 2016-1 of the Local Bankruptcy Rules for the Northern District of California (the "**Local Rules**"), the *Guidelines for Compensation and Expense Reimbursement of Professional and Trustees,* promulgated pursuant to Local Rule 9029-1, governing the narrative portion of fee applications, effective February 19, 2014 (the "**Narrative Guidelines**"), the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (the "**UST Guidelines**"), and the *Order Pursuant to 11 U.S.C. § § 331 and 105(a) and Fed. R. Bankr. P. 2016 For Authority to Establish Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* ("**Interim Compensation Order**") (collectively, the "**Guidelines**") for interim allowance of compensation for professional services and reimbursement of actual and necessary expenses in connection with Baker's representation of the TCC in the above captioned case.

The Applicant seeks interim approval of compensation and reimbursement of expenses from February 15, 2019 through May 31, 0219 (the "**Application Period**") totaling **$7,424,281.74**

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

-4-

which sum represents compensation for legal services rendered in the amount of **$7,190,851.00** and reimbursement for expenses incurred in the amount of **$233,430.74**.

This Application is based upon the contents hereof, together with the exhibits, the declaration of Cecily A. Dumas filed concurrently herewith, the pleadings, papers, and records on file in this case, and any evidence or argument that the Court may entertain at the time of the hearing on the Application.

Pursuant to the Guidelines, a cover letter enclosing this Application is being sent to the Chair of the TCC concurrently. The letter invites the Chair to discuss with the Applicant and/or the Office of the United States Trustee any objections, concerns, or questions the Chair may have regarding the requested compensation and reimbursement set forth in the Application. A copy of the transmittal letter is attached hereto as **Exhibit K**.

## **RELEVANT BACKGROUND**

1.      On January 29, 2019 (the "**Petition Date**") the Debtors filed the Bankruptcy Cases.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Bankruptcy Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

2.      On February 15, 2019, the Office of the United States Trustee ("**UST**") filed an Appointment of the Official Committee of Tort Claimants [Docket No. 453].  Following the resignation of Richard Heffern from the original TCC and the addition of Tommy Wehe, on February 21, 2019, the UST filed the Amended Appointment of the Official Committee of Tort Claimants [Docket No. 530].  The current members of the TCC are: (i) GER Hospitality, LLC, in its capacity as an individual claimant; (ii) Kirk Trostle; (iii) Tommy Wehe; (iv) Angelo Loo; (v)

-5-

Karen K. Gowins; (vi) Agajanian, Inc.; (vii) Susan Slocum; (viii) Samuel Maxwell; (ix) Karen M. Lockhart; (x) Wagner Family Wines-Caymus Vineyards; and (xi) Gregory Wilson.

3.  The TCC represents the interests of fire claimants, whose claims arose as a result of the Debtors' long history of unsafe operations.

4.  As permitted in the Guidelines, Baker incorporates by reference the narrative history furnished in the contemporaneous applications filed by the Debtors' professionals.

5.  On March 17, 2019, the TCC filed its *Application to Employ Baker & Hostetler LLP as Attorneys for the Official Committee of Tort Claimants, Nunc Pro Tunc to the Petition Date* [Docket No. 934] (the "**Retention Application**").  On April 10, 2019, the Court entered its *Order Granting the Application to Employ Baker & Hostetler LLP as Attorneys for the Official Committee of Tort Claimants, Nunc Pro Tunc to the Petition Date* [Docket No. 1331] (the "**Retention Order**")*.*  A true and correct copy of the Retention Order is attached hereto as **Exhibit I**.  Baker is not holding, and has not held, any retainer in connection with the Bankruptcy Cases or the work performed on behalf of the TCC.

6.  As specifically detailed and set forth below, Baker worked with the TCC, its financial advisors, the Official Committee of Unsecured Creditors (the "**OCUC**"), its financial advisors, the Debtors, and its financial advisors to address the serious issues involved in the Bankruptcy Cases during the Application Period.

7.  On May 28, 2019, the Court entered an order appointing Bruce A. Markell as fee examiner ("**Fee Examiner**") in the Bankruptcy Cases. [Docket No. 2267]. Baker has communicated with the Fee Examiner and has supplied information to the Fee Examiner as requested and necessary for the Fee Examiner to evaluate the reasonableness of the compensation sought in this Application.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Case: 19-30088    Doc# 2995    Filed: 07/15/19    Entered: 07/15/19 17:38:11    Page 6 of 43

1  | **RELIEF REQUESTED AND BASIS FOR RELIEF**

2  | 8.      This Application is Baker's first interim request for allowance and payment of fees

3  | and expenses as counsel to the TCC.

4  | 9.      Pursuant to Bankruptcy Code §§ 330 and 4331, Baker respectfully requests entry

5  |
6  | of an order, on an interim basis, allowing and approving $7,424,281.74, which sum represents

7  | compensation for legal services rendered in the amount of $7,190,851.00 and reimbursement for

8  | expenses incurred in the amount of $233,430.74.  Copies of Baker's invoices detailing the

9  | services rendered and expenses incurred during the Application are attached as "**Exhibits E-H**".

10 | 10.     Baker has made every effort to ensure that this Application complies with the

11 | Guidelines and to avoid unnecessary duplication of effort by and among its attorneys and

12 | paraprofessionals, as well as with other retained professionals in these cases. Baker has supplied

13 | the Fee Examiner with Baker's monthly fee statements in an electronic LEDES format Baker

14 |
15 | believes is acceptable to the Fee Examiner.

16 | **SUMMARY OF PROFESSIONAL SERVICES RENDERED**

17 | 11.     Baker's attorneys spent 9,461.15 hours in performing the services described in the

18 | Application, at an average billing rate of $791.39 per hour.

19 | **PROJECT BILLING AND NARRATIVE STATEMENT OF SERVICES RENDERED**

20 |
21 | 12.     In addition to the requirement that a description of the general services rendered by

22 | a professional be provided in a fee application, the Guidelines also require that applications for

23 | compensation should:

24 | "…categorize by subject matter and separately discuss, each project or task.
   | With respect to each project or task, the number of hours spent, the results
25 | obtained, and the amount of compensation and expenses requested should be
   | set forth at the conclusion of the discussion of that project or task."
26 |
27 | 13.     Accordingly, Baker established separate project billing categories for its

28 | representation of the TCC, as follows:

-7-

| CODE | DESCRIPTION |
|------|-------------|
| 001 | Administrative Expense Claims |
| 002 | Asset Sales/363 Sales |
| 003 | Automatic Stay |
| 004 | Bankruptcy Litigation |
| 005 | Bar Date Motion/Claims Reconciliation/Claim Reconciliation Issue |
| 006 | Case Administration (docket updates, WIP, and calendar) |
| 007 | CCA and other Aggregator Issues |
| 008 | Chapter 11 Plan/Plan Confirmation |
| 009 | Committee Meetings and Preparation |
| 010 | Corporate and Board Issues |
| 011 | Customer, Supplier and Vendor Issues |
| 012 | DIP Financing/Cash Mgmt./Hedging Transactions |
| 013 | Disclosure Statement |
| 014 | Employee Issues |
| 015 | Equity Security Holders |
| 016 | Exclusivity |
| 017 | Executory Contract/Lease Issues |
| 018 | General Case Strategy (includes communication with Committee) |
| 019 | Hearings and Court Matters |
| 020 | Legislative Issues/Inverse Reform |
| 021 | Non-Bankruptcy Litigation |
| 022 | Non-Working Travel |
| 023 | FERC Adversary Proceeding |
| 024 | District Court Litigation |
| 025 | Regulatory Issues including CPUC and FERC |
| 026 | Retention Applications |
| 027 | Fee Application: Baker |
| 028 | Fee Application: Other Professionals |
| 029 | Schedules/Statement of Financial Affairs |
| 030 | Tax Issues |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| CODE | DESCRIPTION |
|------|-------------|
| 031 | U.S. Trustee issues/ meetings/ communications/ monthly operating |
| 032 | Unsecured Creditor Issues/ Communications/ Meetings |
| 033 | Utility Issues/Adequate Assurance/Insurance |
| 034 | Withdraw Reference |
| 035 | Real Estate and Real Property Issues |
| 036 | Avoidance Action Analysis/Lien Avoidance Analysis |
| 037 | Investigations |
| 038 | Financial Advisors |
| 039 | Other Contested Matters |
| 040 | Operations |
| 041 | KEIP Issues |
| 042 | Subrogation |
| 043 | Securities |
| 044 | Wildfire Assistance Program |
| 045 | Asset Analysis and Recovery |

14.     These distinct, numbered project billing categories[1] enabled Baker to monitor its activities and appropriately account for the time expended by its professionals and paraprofessionals.  This procedure enables Baker to better inform the TCC, the Court, the UST and the Fee Examiner regarding the nature of the services provided and time expended by its professionals and paraprofessionals.  The project billing categories adopted by Baker are consistent with those used by the Debtors in order to ease the burden of the Fee Examiner's review.

15.     In an effort to streamline and control legal fees and expenses, Baker endeavored to minimize the expenditure of time by its senior partners and to delegate responsibilities to junior partners, associates and other paraprofessional employees as appropriate.  In addition, because Baker does not charge national rates, Baker has endeavored to minimize fees and expenses by

[1] In certain instances, where more than one category of issues might have been addressed during the course of a meeting or telephone conference, Baker's time records may include that time in only one billing category.

-9-

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

staffing the matter with partners and associates from a cross-section of its offices, in order to take advantage of lower rates charged in certain markets. The blended hourly rate for all Baker professionals and paraprofessionals who provided services during the Application Period is $760.04. Attached hereto as **Exhibit B** is a Summary of the Timekeepers included in this Application, including the name and billing rate of each Baker professional and paraprofessional who provided services to the TCC.

16.     In compliance with the Guidelines, a description of the people employed by Baker who rendered services to the TCC in the Bankruptcy Cases during the Application Period and whose time entries appear in the invoices is included in **Exhibit J**, attached hereto.

17.     Pursuant to Bankruptcy Code § 504, Baker has no understanding, agreement, or arrangement of any kind to divide with or pay to anyone any fees that may be awarded to Baker in the Bankruptcy Cases, other than as may be shared among the members of the Baker firm.

18.     Set forth below is a summary description, by project billing category, of the services rendered by Baker during the Application Period.  The specific tasks, the number of hours devoted, and the amounts charged within each billing category are set forth below, and are detailed in the invoices attached as **Exhibits E-H**.

a.      Administrative Expense Claims (001):  The members of the TCC, the constituency most harmed by the Debtors' lax approach to safety, incurred, and will continue to incur on an ongoing basis, expenses in connection with their meaningful participation in the Bankruptcy Cases. As such, Baker met with members of the TCC to come up with a procedure that would promptly reimburse them for expenses so as not to burden them with further hardships. To that end, Baker performed research and advised the TCC, orally and in written memoranda, as to the applicable rules governing reimbursements, including research and review of case law on substantial contribution claims. This work culminated in Baker's Motion of

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Official Committee of Tort Claimants Pursuant to 11 U.S.C. §§ 503(b)(3)(F) and 105(a) to Establish Procedures for Reimbursement of Expenses of Tort Committee Members, which was heard in the Bankruptcy Court on April 9, 2019, and granted by order entered on the same day.

The total hours and amount charged by Baker to this matter during the Application Period represents **52.10 hours** and **$33,698.50** in fees.

b. <u>Asset Sales/363 Sales (002)</u>: This task category includes time spent by Baker addressing the Debtors' motion for entry of an order authorizing them to sell, transfer, lease or otherwise encumber real property, enter into licensing agreements and pursue eminent domain matters. Baker also spent time analyzing the Debtors' filings with the Securities Exchange Commission as necessary to advise the TCC.

The total hours and amount charged by Baker to this matter during the Application Period represents **11.30 hours** and **$9,114.50** in fees.

c. <u>Automatic Stay (003)</u>: During the Application Period, Baker advised the TCC with respect to multiple motions for relief from the automatic stay, including a motion filed by the City and County of San Francisco ("San Francisco"). Among other tasks, Baker analyzed the potential impact of the relief requested by San Francisco, prepared a response to San Francisco's motion and reviewed other responses to the motion. Baker also analyzed a motion to enforce the automatic stay, and addressed issues relating to injunctive relief and extensions of the automatic stay.

The total hours and amount charged by Baker to this matter during the Application Period represents **80.20 hours** and **$67,209.00** in fees.

d. <u>Bankruptcy Litigation (004)</u>: In the Bankruptcy Litigation task code, Baker's work included the development, execution and coordination of all aspects of litigation-related activities. Baker evaluated all relevant pleadings to evaluate and address the potential

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

impacts upon the TCC. Baker prepared and addressed numerous pleadings, orders and motions, including those related to injunctions, show cause orders, interventions in adversary proceedings, and numerous 2004 examinations. Baker communicated with individual committee members and their separate counsel, as well as counsel of record in the bankruptcy case regarding all aspects of litigation including adversary proceedings, discovery disputes, and protective orders. In addition, Baker worked on issues concerning each fire caused or allegedly caused by the Debtors, reviewed transcripts of testimony, and gathered and analyzed background facts in various state court cases as necessary to develop and execute a strategy most effective to the TCC in the Bankruptcy Cases.

The total hours and amount charged by Baker to this matter during the Application Period represents **472.80 hours** and $**377,854.50** in fees.

        e.       <u>Bar Date Motion/Claims Reconciliation/Claim Reconciliation Issue (005)</u>: This category included time spent by Baker professionals preparing a model proof of claim form for fire claimants and proposed notice procedures in connection therewith. During the Application Period, Baker worked with multiple attorneys representing fire claimants in state court, as well as individual committee members, to develop a model proof of claim form for fire claimants that is tailored to the Debtors' Bankruptcy Cases and which also substantially conforms to the Official Form. The model proof of claim form developed by Baker requests information relating to each fire claim, including the year of the fire, the location of loss, the alleged harm caused by the fire, and the damages sought. Baker prepared and filed a motion to approve the TCC's model proof of claim form and negotiated with the Debtors over the Debtors' adoption of the TCC's model proof of claim form, which form was ultimately adopted by the Debtors. Applicant also negotiated with various other parties over the TCC's model proof of claim form, including the United States Trustee and the attorneys for fire claimants in state court proceedings.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

This category also included time spent by Baker professionals reviewing the Debtors' motion to establish a bar date and certain notice procedures in connection therewith. During the Application Period, Baker worked with multiple attorneys that represent fire claimants in state court proceedings and the Angeion Group, LLC to develop an alternative bar date and notice program, including a supplemental notice program designed to reach fire victims that were displaced by fires the Debtors caused that cannot be easily reached through forms of direct notice. Baker prepared and filed a motion to approve a January 2020 bar date and the TCC's notice program to provide the Court with an alternative to the Debtors' proposed bar date and notice program. Baker also prepared and filed an objection to the Debtors' motion to establish a September 2019 bar date and certain notice procedures in connection therewith. Baker negotiated with the Debtors over the Debtors' adoption of the TCC's supplemental notice program, which led to the Debtors' adoption of certain aspects of the TCC's supplemental notice program, as well as an October 2019 bar date.

The total hours and amount charged by Baker to this matter during the Application Period represents **1,210.90 hours** and **$955,388.00** in fees.

        f.     <u>Case Administration (docket updates, WIP, and calendar) (006)</u>: Case administration for this matter included the organization, staffing strategy and structure of the case team members, extensive planning and work stream development to avoid unnecessary duplication of efforts, and case wide coordination of assignments. This task code included the work relating to the systems developed for the internal culling and distribution of all case related e-filings as well as establishing and maintaining a system for review and analysis of filed documents in the Bankruptcy Cases and related district court proceedings. This work included: (i) tracking and analyzing statutory deadlines and preparing critical dates memos for use internally and for distribution to the TCC; (ii) discussions, planning, and strategizing regarding a client communication platform for sharing of documents and information; (iii) developing and

-13-

maintaining the workspace layout and daily updates to the Magnum tool, and managing account access; (iv) collaborative discussions to identify case team requirements for the development of a team site that includes a critical deadlines team calendar, task management and tracking data base, docket maintenance platform, and a tracker for communications with the TCC; (v); extensive discussions surrounding the parameters for the systems facilitation of case management and administration; (vi) implementation of protocols and procedures regarding various issues including docketing, "hot desk" management for initial review and evaluation of pleadings filed to assess potential impacts upon the TCC; (vii) distribution of e-filing notices, document management protocols, e-filing procedures and team calendars; (viii) establishment of case-specific discovery management protocols; (ix) establishment of billing protocols and procedures for case implementation; and (x) establishment of media news coverage including culling and searching defined media sources for coverage relating to the Debtors, the Bankruptcy Cases, and legislative issues as necessary to advise the TCC.

The total hours and amount charged by Baker to this matter during the Application Period represents **336.65 hours** and **$152,763.75** in fees.

g.    CCA and other Aggregator Issues (007):  This task code reflects time spent by Baker researching, identifying and preparing a presentation on Community Choice Aggregators (CCA) and the components of the California energy sector for the TCC.  Baker reviewed and analyzed pleadings and third-party comments filed in California regulatory proceedings relevant to the issues concerning the TCC, and created PowerPoint slides and other information for presentation to the TCC.

The total hours and amount charged by Baker to this matter during the Application Period represents **10.80 hours** are **$7,887.00** in fees.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

-14-

h. <u>Chapter 11 Plan/Plan Confirmation (008)</u>:  The work performed in this task code included discussions with and advisement of the TCC regarding the potential framework and plan structures available and the development of potential plan terms. In addition, this task code encompassed significant plan-related research and analysis concerning the types of assets available to tort claimants, exclusivity issues, possible plan trust terms, structures, and implementation, issues concerning third-party releases, issues particular to tort claimants and plan treatment of mass tort claimants, and issues regarding a potential Chapter 11 Trustee appointment. In addition, this task code reflects research conducted and memoranda drafted concerning plan confirmation issues and standards in the Ninth Circuit and the potential impacts of channeling injunctions. Further encompassed in this task code are negotiations with other constituencies regarding potential plan terms and discussions with the TCC's financial advisors regarding valuation issues as relevant to plan development.

The total hours and amount charged by Baker to this matter during the Application Period represents **147.60 hours** and **$107,150.00** in fees.

i. <u>Committee Meetings and Preparation (009)</u>:  This task code encompassed substantial time for services rendered to the TCC including preparation of presentations to the TCC, and for coordinating and attending regularly scheduled (typically weekly) committee meetings, as well as several fire site visits, including Ghost Ship, the Atlas Fire Zone, and Paradise.  Baker drafted numerous TCC policies, meeting agendas, and reports for the TCC which involved weekly team calls among Baker professionals to strategize on how to efficiently and effectively implement TCC directives, gather specific information important to TCC objectives, and planning site visits to educate the TCC members about facets of the case. Baker assisted members of the TCC with logistical issues facing TCC members displaced by the fires with respect to TCC meeting attendance and attendance at court hearings. In addition, the time spent in

-15-

Case: 19-30088    Doc# 2995    Filed: 07/15/19    Entered: 07/15/19 17:38:11    Page 15 of 43

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

this category includes: (i) working with the TCC Communications subcommittee on establishing and populating the TCC website; (ii) advising TCC members of their rights and duties as committee members; (iii) reporting to the TCC on various regulatory issues; (iv) working with the TCC's financial advisors to coordinate reporting to the TCC; (v) meeting with TCC members to better understand the circumstances of the fire victims and survivors; (vi) assessing and addressing confidentiality issues raised by TCC members; (vii) reporting on the status of retention of financial advisors; (viii) addressing questions regarding Baker's retention (ix) advising the TCC on insurance issues (x) educating the TCC on Chapter 11 process; (xi) and (xii) addressing TCC concerns relating to the media.

The total hours and amount charged by Baker to this matter during the Application Period represents **1,163.80 hours** and **$980,937.00** in fees.

j.    Corporate and Board Issues (010): The work performed in task category covered three principal areas of focus. The first area was the TCC members' duties to their constituents and to the Debtors. This work included research for and the preparation and delivery of memoranda and delivery of oral advice regarding those duties, written and oral advice regarding the duties and authority of the TCC Chair, preparation, revision and advice from time to time regarding the TCC's governing bylaws, including the bylaws' confidentiality provisions for the benefit of the Debtors, and the negotiation, preparation and revision of a separate confidentiality agreement between the debtors and the TCC's professional advisers.

The second area was evaluation of the Debtors' and third parties' SEC filings and media reports on the proxy contest relating to the Debtors' 2019 board of director elections, the Debtors' appointment of new board members and the resignations of their predecessors, and the election of the new board and related board committee assignments, with a view to the qualifications of the appointees to serve and to propose a confirmable plan of reorganization, the grounds for

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

appointment of a trustee to serve in lieu of the boards, California courts' authority regarding the appointment of board members, the CPUC's authority regarding changes in corporate control, and areas for informal inquiry or potential Section 2004 examinations of board appointees regarding the appointees' perspective on their duties generally, wildfire safety experience and potential conflicts of interest. This work included research and memoranda regarding those matters and advising the TCC from time to time regarding those matters and their implications in the context of the bankruptcy proceedings and for plan of reorganization purposes.

The third area was an evaluation of the Debtors' and third parties' other SEC filings, legislative and CPUC proceedings relating to public safety matters (regarding the Debtors specifically and more generally), and media reporting, with reference to the accuracy and completeness of the debtors' public statements, particularly with regard to the effect of tort claims and public safety compliance matters, developments affecting the potential terms of a plan of reorganization, and the existence or viability of a meaningful link between director and officer compensation and the Debtors' public safety performance. The evaluation described was also shared internally for use in other elements of the case, including proceedings relating to extension of the debtors' exclusivity period and the Debtors' motions for approval of their STIP and KEIP programs.

The total hours and amount charged by Baker to this matter during the Application Period represents **391.60 hours** and **$313,815.50** in fees.

k.    Customer, Supplier and Vendor Issues (011): Baker's work in this task category encompassed several different areas including "first day motions," and analysis of other pleadings to determine their potential impact on tort claimants. Baker's work included review and analysis of motions addressing issues such as the debtors' operational integrity suppliers and natural gas and electricity exchange operators, and mutual assistance agreements.

-17-

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

The total hours and amount charged by Baker to this matter during the Application Period represents **10.90 hours** and **$9,167.50** in fees.

l. <u>DIP Financing/Cash Mgmt./Hedging Transactions (012)</u>: Time billed to this category included reviewing the DIP credit agreement, drafting an objection to the DIP motion, negotiating with the Debtors and the DIP lender regarding the TCC's sustained objections, and preparing for multiple hearings on the DIP objection. As a result of this work, the TCC negotiated for favorable language to be added to the DIP order.

The total hours and amount charged by Baker to this matter during the Application Period represents **181.10 hours** and **$142,704.00** in fees.

m. <u>Employee Issues (014)</u>: Time billed to this category was in response to the Debtors' motion to implement a short-term incentive plan ("STIP") for employees. In light of the grave harm caused by the Debtors to the members of the TCC and their families, it was incomprehensible to the TCC that the Debtors proposed a reward plan for their employees. To make the voices and the serious concerns of the TCC heard, Baker was required to prepare for and take depositions of both the Debtors' executive compensation consultant and the head of human resources, and to draft a comprehensive objection to the Debtors' STIP motion, an accompanying declaration and exhibit attachments. In addition, this time category encompasses the time spent preparing for and attending the hearing on the Debtors' STIP motion and the TCC's objection.

The total hours and amount charged by Baker to this matter during the Application Period represents **586.30 hours** and **$466,826.50** in fees.

n. <u>Equity Security Holders (015)</u>: This task code encompasses the time Baker spent considering whether action would be required in connection with 11 U.S.C. § 1102, considering issues with respect to the composition of the equity committee, and on communicating with the equity committee per the request of the UST.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

The total hours and amount charged by Baker to this matter during the Application Period represents **5.30 hours** and **$4,435.50** in fees.

o.   Exclusivity (016):   This task category includes time spent by Baker addressing the Debtors' motion to extend the exclusivity period.   Among other tasks, Baker reviewed and analyzed the Debtors' motion to extend the exclusivity period and reviewed objections and other responses to the motion.  As relevant to the Debtors' motion, Baker researched and analyzed issues concerning the Debtors' financial performance, corporate governance, corporate filings, and safety history.  Baker prepared and filed an opposition to the motion, prepared for the hearing on the motion, and appeared before the Court in opposition to the motion. Baker also communicated with its professionals and counsel for Governor Newsom regarding the motion regarding the potential impacts to the TCC of extending the exclusive period.

The total hours and amount charged by Baker to this matter during the Application Period represents **92.80 hours** and **$75,825.00** in fees.

p.   Executory Contracts/Lease Issues (017):   During the Application Period, Baker assisted the TCC by addressing matters relating to executory contracts of one or both of the Debtors.  Among other tasks, Baker analyzed certain contracts to ascertain whether assumption or rejection would be more beneficial to the TCC. The analysis performed by Baker included agreements relating to the Debtors' Wildfire Safety Inspection Program, and mutual assistance agreements with other utilities.  Baker also communicated with Debtors' counsel and the TCC's professionals regarding issues concerning assumption and rejection. Baker anticipates providing further assistance to the TCC on matters relating to the assumption and rejection of executory contracts and unexpired leases throughout the course of the Bankruptcy Cases.

The total hours and amount charged by Baker to this matter during the Application Period represents **22.30 hours** and **$19,590.00** in fees.

-19-

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

q. <u>General Case Strategy (includes communication with Committee) (018):</u> Communications with the TCC and its members (other than time spent communicating with the TCC during TCC meetings and fire site visits) are included in this category, and include drafting summaries of hearings and considering related strategic action, planning for the 341 examination, obtaining TCC signoff on confidentiality matters, providing advice to the TCC regarding financial advisors and other committee decisions, gathering information at the request of the TCC, designing and implementing an efficient system for tracking and responding to TCC member requests, work on establishing a data room and Magnum database, analysis of pleadings to respond to TCC questions, and working with TCC subcommittees to achieve subcommittee goals. In addition, this task code reflects time spent planning site visits, communicating with the TCC with respect to the media, media coverage and strategy, drafting press releases, and summarizing pleadings filed in the Bankruptcy Cases for the TCC. Further, time in this task code reflects time spent communicating with the TCC regarding Baker's budgeting and staffing plans for the Bankruptcy Cases, case progress reporting, and communications with the TCC regarding case strategy and litigation priorities.

The total hours and amount charged by Baker to this matter during the Application Period represents **422.45 hours** and **$313,399.25** in fees.

r. <u>Hearings and Court Matters (019):</u>  Time billed to this category includes attending hearings, in person or by phone.  In addition, certain attorneys drafted summaries of the hearings for distribution. Hearing preparation, initial work on issues concerning the Debtors Wildfire Assistance Fund (before a separate task code was established for same), research regarding Debtors' duties to aid victims, preparation for and attendance at court hearing on compelling debtors to produce third party contractors and management documents, preparation for and attendance hearings on exclusivity, WA program, meeting with members of the committee before

-20-

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

and after hearings, team meetings to discuss research needed for hearings and hearing coverage among team members, attendance on hearings on retention of professionals, motions for stay relief, and appointment of ratepayer committee

The total hours and amount charged by Baker to this matter during the Application Period represents **196.30 hours** and **$157,293.50** in fees.

    s.  <u>Legislative Issues/Inverse Reform (020):</u> During the Application Period, Baker assisted the TCC by analyzing legislative issues and proposed bills in both the California State Legislature and the United States Congress. Baker attended multiple hearings, including hearings before the California State Senate and California State Assembly. Baker also addressed matters relating to Governor Newsom's Strike Force Report and the report's impact on fire claimants. Baker assisted the TCC with the issuance of communications regarding the Strike Force Report. Baker also assessed issues relating to the potential acquisition of certain assets of the Debtors and the creation of a municipal power entity by San Francisco.

Baker assisted the TCC with inverse condemnation issues, addressing the doctrine's application to investor-owned utilities, and analyzing proposed changes to the law of inverse condemnation. In connection with its work regarding inverse condemnation, Baker assessed certain constitutionality issues, and addressed the Debtors' efforts to have the California Supreme Court judicially alter the application of inverse condemnation.

The total hours and amount charge by Baker to this matter during the Application Period represents **373.00 hours** and **$340,678.50** in fees.

    t.  <u>Non-Bankruptcy Litigation (021):</u> Baker has been monitoring filings and hearings from other legal proceedings involving the Debtors to consider their possible effect on the TCC's interests in the bankruptcy case, and on the bankruptcy case as a whole. The other legal proceedings include, among others, the Debtors' criminal case pending before Judge Alsup in the

-21-

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Northern District of California; the Debtors' settlement of pre-petition wildfire claims; the North Bay fire litigation that was stayed upon the filing of the bankruptcy; the Butte County criminal investigation into the Debtors' role in causing the Camp Fire; and the GhostShip fire litigation.

The total hours and amount charged by Baker to this matter during the Application Period represents **22.70 hours** and **$17,799.50** in fees.

u. <u>Non-Working Travel (022)</u>:

This task code encompassed the time spent by Baker personnel travelling to and from hearings, depositions, meetings with the TCC and meetings with experts, and travel to and from various fire sites. The total hours and amount charged by Baker to this matter during the Application Period represents **402.40 hours** and **$175,158.50** in fees.

v. <u>FERC Adversary Proceeding (023)</u>: Baker has actively monitored two Federal Energy Regulatory Commission ("FERC") dockets in which the FERC has asserted concurrent jurisdiction over any rejection by the Debtors of wholesale power purchase agreements in bankruptcy, as necessary to report to the TCC, both orally and in written memoranda, with respect to ongoing FERC developments. In addition, Baker has monitored the status of the Debtors' motion for preliminary injunction against FERC in the Bankruptcy Cases and the power suppliers that initiated the FERC dockets, as necessary to advise the TCC.

The total hours and amount charged by Baker to this matter during the Application Period represents **21.80 hours** and **$18,705.50** in fees.

w. <u>District Court Litigation (024)</u>: Baker performed work in connection with criminal and civil matters involving the Debtors during the Application Period as relevant to ascertaining possible impacts upon the TCC. Among other actions, Baker addressed issues raised against the Debtors in the criminal case pending before the Honorable William Alsup, including the Debtors' probation violation, the court-ordered tour of areas impacted by wildfires and Judge

-22-

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Alsup's proposed wildfire prevention plan. Baker examined issues relating to victims' rights, access to investigation materials, and the monitorship imposed by the court. Baker also prepared materials relevant to active civil and criminal investigations by state and federal agencies for TCC review. Baker also identified and examined multiple discovery issues, including preservation of evidence and remedies for spoliation as necessary to protect the rights of the TCC.

The total hours and amount charged by Baker to this matter during the Application Period represents **182.40 hours** and **$114,439.50** in fees.

x. <u>Regulatory Issues including CPUC and FERC (025)</u>: Baker performed exhaustive monitoring and review of proceedings pending before the California Public Utilities Commission ("CPUC") and FERC to identify those which could have a material direct or indirect effect on the timing and amount of recoveries by the tort claimants. This important work required Baker to become familiar with the procedural posture of numerous pending proceedings and the filings, rulings, and decisions made in each to date. Baker monitored and tracked ongoing developments and upcoming deadlines and events in spreadsheet form for the TCC's discussion and planning purposes. This work included a daily review of filings, issuances, and transcripts and occasional attendance at prehearing conferences as necessary to the frequent meetings scheduled with the TCC in order to inform them of relevant developments. In addition, Baker monitored CPUC and FERC filings and issuances generally to identify any new proceedings, and reported to the TCC, both orally and in written memoranda, with respect to such new proceedings.

The total hours and amount charged by Baker to this matter during the Application Period are **717.30 hours** representing **$536,538.50** in fees.

y. <u>Retention Applications (026)</u>: Baker performed substantial work in this time category with respect to seeking and obtaining the professional representation desired by the TCC, and to evaluating whether the retention of certain professionals by other constituents, including the

-23-

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Debtors and the OCUC, was necessary and appropriate. With respect to the TCC's financial advisors, Baker assisted the TCC in conducting candidate interviews, evaluating candidate credentials and disinterestedness, and in negotiating the terms of engagement and compensation. Baker prepared applications to employ Lincoln Partners Advisors ("Lincoln") and DSI as its financial advisors and assisted the financial advisors with the related disclosures and declarations. Orders have been entered by the court approving the retention of both Lincoln and DSI.

In addition, given the sheer size of the Debtors' Bankruptcy Cases and the number of interested parties, Baker was required to prepare extensive disclosures of current and prior relationships with parties involved in the Bankruptcy Cases as necessary for retention as counsel to the TCC and as required pursuant to the Bankruptcy Code in connection with Baker's drafting of its own application as counsel to the TCC. Baker drafted disclosures of the specific facts showing the necessity for Baker's employment, the reasons Baker was selected by the TCC, the services to be rendered and compensation arrangements, and all connections of Baker with the Debtors, creditors, other parties in interest, their respective attorneys and accountants, and the UST. In addition, Baker drafted the declaration for Karen Lockhart, committee chair, in support of Baker's application for employment as counsel to the TCC. Baker's retention as counsel to the TCC has been approved by the court.

With respect to other retention applications, Baker reviewed the application of the OCUC to retain Milbank as counsel and Milbank's disclosures, the OCUC's application to retain FTI as its financial advisor, and the application to employ Centerview Partners as necessary to advise the TCC with respect to its rights to object. Baker also reviewed the Debtors' applications to retain Lazard, and Cravath, Swaine and Moore and advised the TCC with respect to relevant considerations. In addition, Baker analyzed case law on retention of special counsel, issues

-24-

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

concerning compensation of professionals by the Debtors' estates, and issues concerning 2014 disclosures as relevant to retention applications

The total hours and amount charged by Baker to this matter during the Application Period represents **293.00 hours** and **$192,145.50** in fees.

z.        <u>Fee Application – Baker (027)</u>: Baker's work in this task code consisted of investigating preferred formats for Interim Fee Applications of the Fee Examiner, Debtors' counsel, and the UST, and drafting the structural outline for Baker's First Interim Fee Application and assembling supporting documents. During the Application Period, Baker reviewed all expenses and billing entries for the months of February, March, April, and May as necessary to prepare monthly fee statements and to confirm that billing for both fees and costs substantially complied with UST guidelines and Judge Montali's rules in terms of the adequacy of task descriptions and to confirm tasks were properly categorized consistent with the task codes established for use by professionals in the Bankruptcy Cases. Baker made discretionary downward adjustments in fees for the benefit of the estate each month, and prepared certificates of no objection for each month for which no objection was filed to Baker's fee statement. In addition, Baker analyzed the order appointing the Fee Examiner and communicated with the Fee Examiner and/or his team regarding preferences for receiving electronic billing data for review.

The total hours and amount charged by Baker to this matter during the Application Period represents **112.90 hours** and **$75,585.00** in fees.

aa.        <u>Fee Application – Other Professionals (028)</u>: Time spent in this task code related to Baker's work in reviewing fee statements or applications of other professionals including those for Weil, FTI, Centerbridge, Keller, and Compass, as well as work related to the TCC expense motion and preparation of guidance to TCC members concerning expenses.

-25-

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

The total hours and amount charged by Baker to this matter during the Application Period represents **8.20 hours** and **$5,229.50** in fees.

bb.     Schedules/Statement of Financial Affairs (029):   This category relates to time spent analyzing over 31,000 pages of the Debtors' schedules and Statements of Financial Affairs ("SOFAs"), and the preparation of memoranda summarizing these documents for the Committee members.  It also relates to the development of strategy in response to potential further extensions of the deadline to file the schedules and SOFAs, and to the ongoing review and analysis of the Debtors' monthly operating reports.  From the outset of the case, Baker monitored the filing status of the Debtors' Schedules and SOFAs.  In anticipation of the Debtors' motion for further extension of the deadline to file their Schedules and SOFAs, in March 2019, Baker conducted research analyzing the basis for objecting to the motion.

On March 14, 2019, the Debtors filed: (1) the Summary of Assets and Liabilities; (2) the Global Notes and Statement of Limitations, Methodology, and Disclaimers Regarding Debtors' Schedule of Assets and Liabilities; (3) Schedule A/B; (4) Schedule D; (5) Schedule E/F; (6) Schedule G; and (7) Schedule H, for Debtor PG&E Corporation and for the Utility.  PG&E team members performed a thorough analysis and review of each schedule, the Summary of Assets and Liabilities, and the Global Notes.  These documents totaled over 27,000 pages.  Baker then prepared comprehensive memoranda summarizing same, providing additional detail about the wildfire and tort claims.  Baker then presented the memoranda to the Committee members.

On April 15, 2019, the Debtors filed the SOFAs for PG&E Corporation and for the Utility, comprising a total of over 4,000 pages of data and information.  Baker performed a thorough analysis and review of each SOFA, and prepared a comprehensive memorandum summarizing same.  The memorandum was presented to the TCC.

-26-

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

On April 1, 2019, the Debtors filed two Monthly Operating Reports, one for the filing period through January 31, 2019, and the other for the filing period through February 28, 2019. Baker analyzed these reports.

On May 1, 2019, the Debtors filed the Motion for an Order Modifying the Debtors' Deadlines for Filing Monthly Operating Reports and Approving Proposed Modifications to Form of Monthly Operating Reports. Baker analyzed the motion to determine whether the TCC would prepare a response or objection.

The total hours and amount charged by Baker to this matter during the Application Period represents **80.20 hours** and **$59,922.50** in fees.

cc.     Tax Issues (030): Baker performed work in this task code related to tax motions and a supplemental tax payment request by the Debtors, including preparation of a memorandum concerning the relevance of net operating losses ("NOL") to the Bankruptcy Cases and evaluating potential action needed with respect to NOL and a tax attribute preservation motion and related documents filed by Debtors, as necessary to determine whether such could impact the TCC.

The total hours and amount charge by Baker to this matter during the Application Period are **28.40 hours** representing **$25,391.00** in fees.

dd.     U.S. Trustee issues/ meetings/ communications/ monthly operating (031): Work in this task code included time spent by Baker communicating with and responding to questions of the UST concerning the TCC. In addition, the hours worked include time spent preparing for and attending the 341 meeting, and communications with the UST, other professionals, and the TCC in regards to the UST's decision to appoint a fee examiner in the Bankruptcy Cases. Baker reviewed all pleadings regarding the appointment of a fee examiner as necessary to advise the TCC.

-27-

The total hours and amount charged by Baker to this matter during the Application Period represents **21.60 hours** and **$20,141.00** in fees.

ee.    Unsecured Creditor Issues/ Communications/ Meetings (032):  During the Application Period, Baker assisted the TCC by emails, teleconferences and other communications with Committee members, their counsel, and various unsecured creditors.  Baker assisted the TCC by preparing for, and participating in, several Committee meetings.  Baker assisted the TCC in its first meeting following its organizational meeting as well as numerous regularly scheduled meetings.  Baker assisted with the preparation of TCC meeting agendas, distribution of material prepared by Baker and other Committee's professionals and advising the TCC in connection many other aspects of its meetings.

During the Application Period, Baker communicated and met with tort claimants' counsel and various groups of unsecured creditors including the counsel for the Official Committee of Unsecured Creditors and the Ad Hoc Group of Noteholders. Those meetings and discussions involved status and administration of these cases, various business issues, case strategy, and many other issues relating to these cases.

The total hours and amount charged by Baker to this matter during the Application Period represents **48.40 hours** and **$47,419.00** in fees.

ff.    Utility Issues/Adequate Assurance/Insurance (033):  Time spent in this task code reflects research regarding common insurer issues and the use of insurance proceeds, research on the treatment of insurance proceeds in bankruptcy cases in the Ninth Circuit, review and analysis of indemnity issues, and consideration of issues concerning EsVolta motion practice regarding energy storage, as necessary to evaluate mechanisms for segregation of insurance proceeds for the benefit of the TCC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

-28-

The total hours and amount charged by Baker to this matter during the Application Period represents **11.20 hours** and **$8,048.00** in fees.

gg. <u>Withdraw Reference (034)</u>: Baker reviewed the district court decision denying withdrawal of the reference and performed legal research regarding the appropriateness of withdrawing the reference in certain circumstances as necessary to consider whether the denial of the withdrawal of the reference would impact the TCC.

The total hours and amount charged by Baker to this matter during the Application Period represents **12.70 hours** and **$9,149.00** in fees.

hh. <u>Real Estate and Real Property Issues (035)</u>: Baker assisted the TCC with real estate issues relating to the Bankruptcy Cases by reviewing and advising the TCC regarding the Debtors' real estate procedures motion. Baker also worked with the professionals of other committees to analyze the Debtors' real estate issues as necessary to best advise the TCC.

The total hours and amount charged by Baker to this matter during the Application Period represents **27.50 hours** and **$25,202.00** in fees.

ii. <u>Avoidance Action Analysis/Lien Avoidance Analysis (036)</u>: During the relevant period, Baker assisted the TCC with evaluating potential claims against the recipients of avoidable transfers. Among other services provided in this category, Baker conducted legal research and a factual analysis of the TCC's right to assert avoidance claims under state and federal law and the strengths and weaknesses of those claims. This work included the examination of financial analyses prepared by the TCC's financial advisors regarding transfers made by the Debtors. Baker also drafted internal memoranda analyzing these issues for the TCC's consideration.

The total hours and amount charged by Baker to this matter during the Application Period represents **25.00 hours** and **$16,087.00** in fees.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

-29-

jj.    Investigations (037):    During the Application Period, Baker investigated various factual matters critical to effectively representing the TCC and maximizing value to the Debtors' estates. Among other services provided in this category, Baker analyzed information contained within the Debtors' first-day motions and related declarations, the Debtors' data room and publicly available materials regarding the wildfires and the debtors' finances and operations. Baker also drafted due diligence requests to the Debtors' professionals for certain additional information and documents to the extent the foregoing was not publicly available or otherwise previously disclosed by the Debtors. Baker has continued to review such materials on a rolling basis, including in connection with evaluating case strategy and analyzing potential causes of action that may benefit the estates.

The total hours and amount charged by Baker to this matter during the Application Period represents **21.70 hours** and **$16,041.00** in fees.

kk.    Financial Advisors (038):    Baker assisted the TCC both with retaining its financial advisors and with negotiating the compensation of other constituencies' financial advisors in the Bankruptcy Cases.  Substantial time was spent assisting the TCC in reviewing and interviewing several financial advisor candidates, and assisting the TCC in its selection and guiding the TCC through the retention process.  Baker assisted the TCC with selecting four financial advisors, resulting in retention applications being prepared by Baker and filed for Lincoln International Partners and Development Specialists, Inc. during the Application Period.

In addition to assisting the TCC retain its own financial advisors, Baker assisted the TCC with negotiating the compensation arrangements for both the Debtors' financial advisors as well as the Official Committee of Unsecured Creditors' financial advisors.

The total hours and amount charged by Baker to this matter during the Application Period represents **632.90 hours** and **$542,299.00** in fees.

-30-

ll.     <u>Other Contested Matters (039):</u> Baker's work in this task category encompassed several different areas including "first day motions," analysis of other pleadings to determine their potential impact on tort claimants, the wildfire assistance fund, and discovery. Baker's work in connection with first day motions included review and analysis of motions addressing issues such as the debtors' (1) cash management system, (2) insurance, (3) taxes, (4) utilities, (5) reclamation claims, (6) employee wages and benefits, (7) prepetition obligations to lien claimants, operational integrity suppliers and natural gas and electricity exchange operators, (8) procedures for interim compensation of professionals retained in the Cases, and (9) procedures for ordinary course professionals. Baker reviewed responses to first day motions. Baker also prepared objections to certain first day motions and prepared for and attended the hearing on the first day motions.

In addition to first day motions, Baker reviewed filings in the Cases and related adversary proceedings, including the debtors' adversary proceeding against the Federal Energy Regulatory Commission. Baker examined the filings in order to remain apprised of developments in the Cases and to determine whether there was a need for the TCC to respond to a filing, either formally or informally. Baker also prepared analyses regarding certain filings.

Baker also addressed multiple discovery issues during the Application Period. Baker prepared for and attended depositions. Baker also reviewed and analyzed confidentiality and non-disclosure agreements. Baker examined issues relating to 2004 subpoenas and document production. Baker also prepared an application to compel document production.

Baker also provided services to the TCC in connection with the establishment of an urgent needs fund. Baker analyzed the potential legal bases for a court to approve the establishment of a fund and assessed the appropriate amount of initial funding. Baker also addressed issues as to claimant eligibility to participate in the fund.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

-31-

The total hours and amount charged by Baker to this matter during the Application Period represents **253.30 hours** and **$194,760.50** in fees.

mm.    Operations (040):  Baker assisted the TCC with its operation and governance by drafting and revising TCC bylaws, and confidentiality and other related documents as necessary to assist the TCC with its effective operation.  In addition, during the Application Period, Baker assisted the TCC with a website to communicate with its constituency, and Baker regularly updates the TCC's website at the direction of the TCC and its various subcommittees. Baker regularly advised and responded to the TCC and its chairperson regarding operating and governance questions during the Application Period.

The total hours and amount charged by Baker to this matter during the Application Period represent **207.75 hours** and **$168,208.50** in fees.

nn.    Subrogation (042):  This category includes time spent by Baker professionals analyzing the treatment of subrogation claims against the Debtors and the impact such claims could have on recoveries for the TCC, and on drafting extensive related memoranda.  Baker, among other things, analyzed case law with respect to the relative priority of subrogation claims, analyzed California's "make-whole" rules, issues concerning insurance claims and indemnification, the treatment of subrogation claims under potential plans of reorganization, and advised the TCC regarding potential legal arguments that could be asserted concerning the treatment of subrogation claims in the Bankruptcy Cases.

The total hours and amount charged by Baker to this matter during the Application Period represent **361.40 hours** and **$220,948.50** in fees.

oo.    Securities (043): The work performed on this task consisted of a review of SEC filings and other public statements by the Debtors and by shareholder groups regarding competing board nominee slates and a potential proxy contest for board control in order to update

-32-

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

and advise the committee. It also involved reviewing federal proxy solicitation rules, the Debtors' organizational documents and prior public disclosures about shareholder nomination rights and applicable corporate law provisions to analyze potential alternative scenarios in the event of a proxy contest and how those scenarios might impact the TCC. Lastly, Baker assessed how the proxy rules might apply to the TCC in the event it engaged in any public communications or other activities in connection with a potential proxy contest.

The total hours and amount charged by Baker to this matter during the Application Period represent **15.90 hours** and **$10,186.50** in fees.

pp. <u>Wildfire Assistance Fund (044):</u>

In early May, the Debtors filed a motion to establish a $105M Wildfire Assistance Fund to fund the urgent needs of the fire victims who have been displaced by the fires. Baker reviewed the Debtors' filings, strategized on a response, drafted the response and cross motion, coordinated forty [40] witness declarations in support of the response, worked with the TCC's financial advisors in analyzing the fund amount and in drafting a declaration regarding the same, analyzed the Debtors' authority to establish the fund, worked with the OCUC and the Debtors to identify a fund administrator, and coordinated fire victim attendance and possible testimony at the hearing on the fund. Baker also assisted the TCC in establishing a working group to assist in developing the fund's guidelines and structure.

The total hours and amount charged by Baker to this matter during the Application Period represent **184.30 hours** and **$155,758.50** in fees.

19. <u>Costs and Expenses:</u> Baker requests allowance and reimbursement of actual, reasonable, and necessary out-of-pocket expenses in the amount of $233,430.74 incurred while rendering professional services on behalf of the TCC during the Application Period.

20.     Expenses incurred by Baker during the Application Period are set forth in detail on the invoices found in **Exhibits E-H** and are summarized in **Exhibit D-2.**

21.     Baker submits that all expenses incurred during the Application Period were reasonable and necessary, are sought in compliance with the Guidelines, and should be allowed on an interim basis by the Court.

### THE FEES AND EXPENSES REQUESTED
### SHOULD BE AWARDED BASED UPON APPLICABLE LAW

22.     Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 to govern the Court's award of such compensation. 11 U.S.C. § 331. Section 330 provides that a Court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered [and] reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1). Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded to [a] professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A)     the time spent on such services;
>
> (B)     the rates charged for such services;
>
> (C)     whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E)     with respect to a professional person, whether the person is board certified or otherwise has demonstrated

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

skill and experience in the bankruptcy field; and

(F)     whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

Id. § 330(a)(3).

23.     In determining the amount of allowable fees under Bankruptcy Code section 330(a), courts are to be guided by the same "general principles" as are to be applied in determining awards under the federal fee-shifting statutes, with "some accommodation to the peculiarities of bankruptcy matters." *Burgess v. Klenske (In re Manoa Finance Co., Inc.*), 853 F.2d 687, 691 (9th Cir. 1988).

24.     In assessing the propriety of an award of attorneys' fees, twelve factors relevant to determining such fees were identified in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714, 717-719 (5th Cir. 1974, a Title VII class action case under the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq., and *Kerr v. Screen Extras Guild, Inc*., 526 F 2d. 67, 70 (9th Cir. 1975), *cert denied*, 425 U.S. 951 (1976): (a) the time and labor required, (b) the novelty and difficulty of the questions, (c) the skill requisite to perform the service properly, (d) the preclusion of other employment by the professional due to acceptance of the case, (e) the customary fee, (f) whether fee is fixed or contingent, (g) time limitations imposed by client or the circumstances, (h) the amount involved and the results obtained, (i) the experience, reputation and ability of the professionals, (j) the undesirability of the case, (k) the nature and length of the professional relationship with the client, and (l) awards in similar cases. *See American Benefit Life Ins. Co. v. Baddock* (*In re First Colonial Corp. of America*), 544 F. 2d 1291 (5th Cir. 1977) (*Johnson* criteria applicable in bankruptcy cases):

(a) the time and labor required:  The TCC represents the interests of the most important constituency in these cases.  Unlike the Debtors and other creditors, the TCC had no relationship

-35-

with PG&E pre-petition. The time and labor required to protect the interests of the TCC has been substantial.

(b) the novelty and difficulty of the questions: Many of the issues related to this case are novel, due to the significant claims of the fire claimants and the nature of the Debtors' businesses.

(c) the skill requisite to perform the service properly: The skill to perform the representation of the TCC properly is significant. There are numerous complex issues presented by these cases.

(d) the preclusion of other employment by the professional due to acceptance of the case: Other employment of Baker has been precluded due to conflict issues created by this representation.

(e) the customary fee: Baker is charging its customary fees in this matter.

(f) whether fee is fixed or contingent: The fee is an hourly fee.

(g) time limitations imposed by client or the circumstances: There have been constrained time limitations in this representation due to the fast pace of the case and the necessity to digest significant information on an expedited basis.

(h) the amount involved and the results obtained: The blended rate of Baker is lower than the other professionals in these cases, and the TCC has been instrumental in issues related to the DIP, the claim form for fire claimants, the victims' compensation fund, and other matters.

(i) the experience, reputation and ability of the professionals: Baker is well known for its experience and expertise in bankruptcy matters. Ms. Dumas is a fellow in the American College of Bankruptcy ("ABC") and the team is comprised of seasoned litigators and well-respected lawyers from across Baker.

(j) the undesirability of the case: The case is not undesirable but it is time consuming and complicated.

(k) the nature and length of the professional relationship with the client: Baker had no relationship with the TCC prior to this case.

-36-

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

(l) <u>awards in similar cases</u>:    Baker's fee application is comparable with other awards in similar cases.

25.    The time for which compensation is sought is detailed in Baker's professional fee invoices attached hereto as **Exhibits E-H**.  Baker's services and time expenditures are reasonable considering the labor required and outcome achieved to date in this complicated case.  Baker charges for its professional services based upon the time, nature, extent and value of such services and the cost of comparable services in the San Francisco bay area, other than in a case under the Bankruptcy Code. The compensation Baker seeks by way of this Application is the customary compensation commonly sought by the Baker and other professionals representing trustees, committees, and debtors in similar circumstances.

### ADDITIONAL QUESTIONS FROM THE
### UST GUIDELINES FOR LARGER CHAPTER 11 CASES

26.    Pursuant to Appendix B of the UST Guidelines, Applicant answers the questions below as follows:

27.    Did Applicant agree to any variations from, or alternatives to, Applicants' standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period?  If so, please explain.

*ANSWER*: *No.*

28.    If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher than 10% or more, did Applicant discuss the reasons for the variation with the client?

*ANSWER*: *The fees sought in Baker's Application fell in line with those budgeted as a whole. On occasion, fees associated with one particular task code may have slightly exceeded the fees budgeted, but in no instance did fees budgeted for any task code exceed 10% of the budgeted amount for any such task code.  In certain task codes Baker's fees were less than the amount*

-37-

Case: 19-30088   Doc# 2995   Filed: 07/15/19   Entered: 07/15/19 17:38:11   Page 37 of 43

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*budgeted, bringing the total amount of fees sought by Baker in this Application in line to the fees budgeted for at the inception of this engagement. As such, the fees sought did not exceed the fees budgeted by 10% or more in the period covered by this Application.*

29.     Have any of the professionals in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?

*ANSWER: No.*

30.     Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing or revising invoices?  (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.)  If so, please quantify by hours and fees.

*ANSWER: Baker reviewed each time entry in the billing records submitted with this Application in connection with preparation of the required monthly fee statements for the TCC as necessary to confirm tasks were allocated to the proper task code by each timekeeper and that each task was adequately described as required by the Guidelines and as necessary to facilitate the Fee Examiner's evaluation of the reasonableness of the fees requested by this Application. On occasion during this review, time entries may have been moved from one task code to another task code as appropriate or divided up and apportioned between two or more task codes[2] where the time entry clearly reflected work performed that impacted more than one area of Baker's representation of the TCC, as necessary to adhere to the budget. Baker estimates that approximately five [5] hours each month for the period covered by this Application was spent performing such work. The Application does not include time or fees related to preparing, reviewing, or revising invoices.*

---

[2] For instance, a time entry reflecting 1.5 hours may have been broken down into smaller increments and spread between two or more task code categories. For example, where a task described research performed that could impact both Chapter 11 plan structure and the treatment of particular claims, the 1.5 hour entry may have been apportioned so that .7 was allocated to Task Code 008 (concerning Chapter 11 Plan/Plan Confirmation) and .8 was allocated to Task Code 005 (concerning, among other things, claims).

-38-

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

31.     Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees.

*ANSWER: As stated above, Baker reviewed each time entry in the Application to confirm tasks were allocated to the proper task code by each timekeeper and that each task was adequately described as required by the Guidelines and as necessary to facilitate the Fee Examiner's evaluation of the reasonableness of the fees requested by this Application. Each timekeeper on this case has been instructed to consider issues of confidentiality contemporaneously with drafting his or her time entries so that a further subsequent review of time records in connection with an assessment of privilege or confidentiality is unnecessary. Baker's billing records submitted with this Application do not contain redactions.*

32.     If this fee application includes any rate increases since retention: (i) Did your client review and approve those rate increases in advance? (ii) Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

*ANSWER: The Application does not include any rate increases since Baker was retained as counsel to the TCC. Baker typically adjusts rates at the beginning of each calendar year, and this is routinely disclosed in Baker's engagement letters to clients. Prior to any decision to increase rates for the engagement as counsel to the TCC, Baker will discuss the matter with the TCC and will advise the TCC they need not agree to modified rates or terms in order for Baker to continue representing the TCC.*

33.     Pursuant to the UST Guidelines, required exhibits are attached as:

(a)     **Exhibit A** – "Customary and Comparable Compensation Disclosure with Fee Applications"

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

(b)  **Exhibit B** – "Summary of Timekeepers Included in this Application".

(c)  **Exhibit C-1** – "Budget"

(d)  **Exhibit C-2** – "Staffing Plan"

(e)  **Exhibit D-1** – "Summary of Compensation Requested by Project Category"

(f)  **Exhibit D-2** – "Summary of Expense Reimbursement Requested by Category"

## AVAILABLE FUNDS

34.    Baker understands that the Debtors have sufficient funds available for the payment of interim fees and costs requested herein.

## CONCLUSION

35.    Baker believes that this Application appropriately sets forth the significant matters handled on behalf of the TCC and provides this Court, the UST, the Fee Examiner, the Debtors' creditors, and other interested parties with an insightful overview of the scope of services rendered. Thus, Baker respectfully submits that the fees and expenses sought herein are reasonable and that the services rendered were necessary, effective, efficient and economical. Accordingly, Baker respectfully requests that this Application for allowance of fees and expenses, on an interim basis, be granted in all respects.

WHEREFORE, Baker respectfully seeks entry of an order, essentially in the form as attached **Exhibit L**:

1.    Awarding interim allowance of compensation for professional services rendered during the Application Period in the amount of $7,424,281.74, consisting of $7,190,851.00 in fees occurred and $233,430.74 in actual and necessary expenses.

2.    Authorizing and directing the Debtors to make prompt payment to Baker the total amount of $5,105,069.63, which is the difference between the amount requested and the amount already paid by the Debtors pursuant to the Interim Compensation Order.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

-40-

3. Granting such other and further relief as the Court may deem just and proper.

Dated: July 15, 2019

BAKER & HOSTETLER LLP

By: */s/ Cecily A. Dumas*
Cecily A. Dumas
Counsel to the Official Committee of Tort Claimants

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## CERTIFICATION

I, Cecily A. Dumas, declare as follows:

The following facts are personally known to me, and if called to do so, I could and would competently testify thereto.

1. I am a partner in the law firm of Baker & Hostetler LLP ("**Baker**"). I submit this certification in support of the *First Interim Application of Baker & Hostetler LLP for Allowance and Payment of Compensation and Reimbursement of Expenses for the Period February 15, 2019 through May 31, 2019* (the "**Application**").[3]

2. I have personally reviewed the information contained in the Application and believe its contents to be true to the best of my knowledge, information and belief.

3. The compensation and expense reimbursement sought in this Application, to the best of my knowledge, information and belief, after reasonable inquiry, is in conformity with sections 330(a) and 331 of title 11, United States Code (the "**Bankruptcy Code**"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2016-1 of the Local Bankruptcy Rules for the Northern District of California (the "**Local Rules'**), the *Guidelines for Compensation and Expense Reimbursement of Professional and Trustees,* promulgated pursuant to Local Rule 9029-1, governing the narrative portion of fee applications, effective February 19, 2014 (the "**Narrative Guidelines**"), the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (the "**UST Guidelines**), and the *Order Pursuant to 11 U.S.C. § § 331 and 105(a) and Fed. R. Bankr. P. 2016 For Authority to Establish Procedures*

---

[3] Capitalized terms not defined have the meanings used in the Application.

*for Interim Compensation and Reimbursement of Expenses of Professionals* ("**Interim Compensation Order**") (collectively, the "**Guidelines**").

    4.    The compensation and expense reimbursement requested in this Application are billed at rates, in accordance with practices, no less favorable than those customarily employed by Baker and generally accepted by Baker's clients.

Date:   July 15, 2019       BAKER & HOSTETLER LLP

By: */s/ Cecily A. Dumas*
Cecily A. Dumas
Counsel to the Official Committee of Tort Claimants

-43-