BRAD BRIAN (State Bar No. 79001)
Brad.Brian@mto.com
THOMAS B. WALPER (State Bar No. 96667)
thomas.walper@mto.com
HENRY WEISSMANN (State Bar No. 132418)
henry.weissmann@mto.com
BRADLEY SCHNEIDER (State Bar No. 235296)
bradley.schneider@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue
Fiftieth Floor
Los Angeles, California 90071
Telephone:     (213) 683-9100
Facsimile:     (213) 683-3702

*Attorneys for Debtors
and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 19-30088 (DM) |
| PG&E CORPORATION, | Chapter 11 |
| - and – | (Lead Case) |
| PACIFIC GAS AND ELECTRIC COMPANY, | (Jointly Administered) |
| Debtors. | **FIRST INTERIM FEE APPLICATION OF MUNGER, TOLLES & OLSON LLP FOR COMPENSATION FOR SERVICES AND REIMBURSEMENT OF EXPENSES AS ATTORNEYS TO THE DEBTORS AND DEBTORS IN POSSESSION FOR CERTAIN MATTERS FROM JANUARY 29, 2019 THROUGH MAY 31, 2019** |
| ☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors | |
| *All papers shall be filed in the Lead Case No. 19-30088 (DM).* | **Hearing:**<br>Date: September 25, 2019<br>Time: 9:30 a.m. (Pacific Time)<br>Place: United States Bankruptcy Court<br>        Courtroom 17, 16th Floor<br>        San Francisco, CA 94102 |

# TABLE OF CONTENTS

**Page**

Jurisdiction and Basis for Relief ..................................................................................... 3

Background ........................................................................................................................ 4

    A.    The Bankruptcy Filing and General Case Background ................................... 4

    B.    Debtors' Retention of MTO ......................................................................... 4

    C.    No Adverse Interest with Respect to the Specific Matters ......................... 7

Summary of Compliance with Interim Compensation Order .......................................... 8

Fees and Expenses Incurred During the Fee Period ........................................................ 8

    A.    Customary Billing Disclosures ................................................................... 8

    B.    Fees Incurred During the Fee Period .......................................................... 9

    C.    Expenses Incurred During the Fee Period .................................................. 9

Summary of Legal Services Rendered During the Fee Period ...................................... 10

Actual and Necessary Expenses Incurred by MTO ...................................................... 12

Client Review of Billing Statements ............................................................................. 13

Reasonable and Necessary Services Provided by MTO ................................................ 13

    A.    Reasonable and Necessary Fees and Expenses Incurred in Providing Services to the Debtors ................................................................................ 13

MTO's Requested Compensation and Reimbursement Should be Allowed .................. 13

Statement Regarding United States Trustee Guidelines ............................................... 16

Reservation of Rights .................................................................................................... 16

Notice ............................................................................................................................ 17

No Prior Request ........................................................................................................... 17

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*American Benefit Life Ins. Co. v. Baddock (In re First Colonial Corp. of America)*,
    544 F.2d 1291 (5th Cir. 1977) .................................................................. 15

*Burgess v. Klenske (In re Manoa Finance Co., Inc.)*,
    853 F.2d 687 (9th Cir. 1988) .................................................................. 15

*Johnson v. Georgia Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) .................................................................. 15

*Kerr v. Screen Extras Guild, Inc.*,
    526 F.2d 67 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976): (1) ........... 15

*Roberts, Sheridan & Kotel, P.C. v. Bergen Brunswig Drug Co. (In re Mednet MPC Corp.)*,
    251 B.R. 103 (9th Cir. BAP 2000)............................................................ 15

**FEDERAL STATUTES**

11 U.S.C. § 105(e) ................................................................................... 3

11 U.S.C. § 327 ...................................................................................... 14

11 U.S.C. § 327(e) ................................................................................... 4

11 U.S.C. § 330 ............................................................................... passim

11 U.S.C. § 330(a) ............................................................................. 14, 15

11 U.S.C. § 330(a)(1) ............................................................................. 14

11 U.S.C. § 330(a)(3) ............................................................................. 14

11 U.S.C. § 331 ...................................................................................... 3

11 U.S.C. § 1107(a) ................................................................................. 4

11 U.S.C. § 1108 ..................................................................................... 4

28 U.S.C. § 157 ...................................................................................... 3

28 U.S.C. § 157(b) .................................................................................. 3

28 U.S.C. § 1334 ..................................................................................... 3

28 U.S.C. § 1408 ..................................................................................... 3

28 U.S.C. § 1409 ..................................................................................... 3

42 U.S.C. § 2000 ..................................................................................... 15

**FEDERAL RULES**

Fed. R. Bankr. P. 1015(b) ........................................................................ 4

Fed. R. Bankr. P. 2014(a) ........................................................................ 4

Fed. R. Bankr. P. 2016 ......................................................................... 3, 4

Fed. R. Bankr. P. 2016(b) ........................................................................ 8

Local Rules Rule 2016-1(a) ...................................................................... 3

Local Rules Rule 5011-1(a) ...................................................................... 3

*General Information*

| Name of Applicant: | Munger, Tolles & Olson LLP |
|---|---|
| Authorized to Provide Services to: | PG&E Corporation and Pacific Gas and Electric Company |
| Petition Date: | January 29, 2019 |
| Date of Retention Order: | April 25, 2019, *nunc pro tunc* to January 29, 2019[1] |

*Summary of Fees and Expenses Sought In the Fee Application*

| Period for Which Compensation and Reimbursement is Sought in the Fee Application: | January 29, 2019 through May 31, 2019 |
|---|---|
| Amount of Compensation Sought as Actual, Reasonable, and Necessary for the Fee Period: | $6,653,996.00 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable, and Necessary for the Fee Period: | $99,363.65 |
| Total Compensation and Expense Reimbursement Requested for the Fee Period: | $6,753,359.65 |

*Rate Increases Applicable to the Fee Period*

| Total Amount of Compensation Sought For the Period, Calculated Using Rates as of the Date of Retention: | There have not been any rate increases since the date of retention. |
|---|---|

*Summary of Past Requests for Compensation and Prior Payments*

| Total Amount of Compensation Previously Requested Pursuant to the Interim Compensation Order to Date: | $0 |
|---|---|

---

[1] The *Order Authorizing Debtors Pursuant to 11 U.S.C. § 327(e) and Fed. R. Bankr. P. 2014(a) and 2016 for Authority to Retain and Employ Munger, Tolles & Olson LLP as Counsel for Certain Matters the Debtors Effective as of the Petition Date* [Dkt No. 1677] was entered on April 25, 2019 (the "Retention Order").

| | |
|---|---|
| Total Amount of Expense Reimbursement Previously Requested Pursuant to the Interim Compensation Order to Date: | $0 |
| Total Compensation Approved Pursuant to the Interim Compensation Order to Date: | $0 |
| Total Expense Reimbursement Approved pursuant to the Interim Compensation Order to Date: | $0 |
| Total Allowed Compensation Paid to Date: | $0 |
| Total Allowed Expenses Paid to Date: | $0 |
| Compensation Sought in This Fee Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed: | $0 |
| Expenses Sought in This Fee Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed: | $0 |

In accordance with the Local Rules for the Northern District of California (the "**Local Rules**"), Munger, Tolles & Olson LLP ("**MTO**"), attorneys to the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") for certain matters, hereby submits its first interim fee application (this "**Fee Application**") for allowance of compensation for professional services provided in the amount of $6,653,996.00 and reimbursement of actual and necessary expenses in the amount of $99,363.65 that MTO incurred for the period from January 29, 2019 through May 31, 2019 (the "**Interim Fee Period**" or "**Fee Period**"). In support of this Fee Application, MTO has filed the Declaration of Seth Goldman (the **"Goldman Declaration"**) concurrently with this Fee Application. In further support of this Fee Application, MTO respectfully states as follows.

MTO submits the Fee Application as an interim fee application in accordance with the *Order Pursuant to 11 U.S.C §§ 331 and 105(e) and Fed. R. Bankr. P. 2016 for Authority to Establish Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*, entered on February 28, 2019 [Docket No. 701] (the "**Interim Compensation Procedures Order**").

## Jurisdiction and Basis for Relief

The Court has jurisdiction over this Fee Application under 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Local Rules. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court under 28 U.S.C. §§ 1408 and 1409.

The basis for the relief requested herein are sections 330 and 331 of the Bankruptcy Code, rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rule 2016-1(a) of the Local Rules, and the Interim Compensation Procedures Order. Except where noted in the Goldman Declaration regarding non-working travel time, MTO has also prepared this Fee Application in accordance with the *United States Bankruptcy Court Northern District of California Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees*, effective February 19, 2014 (the "**Local Guidelines**"), and the U*.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (the "**U.S. Trustee Guidelines**," and together with the Local Guidelines, the "**Fee Guidelines**").

**Background**

**A.     The Bankruptcy Filing and General Case Background**

On January 29, 2019 (the "**Petition Date**"), the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, or examiner has been appointed in either of the chapter 11 cases.  The Debtors' chapter 11 cases are being jointly administered for procedural purposes only, pursuant to Bankruptcy Rule 1015(b).

On February 12, 2019, the United States Trustee (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors (the "**Creditors Committee**").  On February 15, 2019, the U.S. Trustee appointed an Official Committee of Tort Claimants (the "**Tort Claimants Committee**" and, together with the Creditors Committee, the "**Committees**").  Additional information regarding the circumstances leading to the commencement of the chapter 11 cases and information regarding the Debtors' businesses and capital structure is set forth in the *Amended Declaration of Jason P. Wells in Support of the First Day Motions and Related Relief* [Docket No. 263] (the "**Wells Declaration**").

**B.     Debtors' Retention of MTO**

On April 1, 2019, the Debtors filed the *Application of Debtors Pursuant to 11 U.S.C. § 327(e) and Fed. R. Bankr. P. 2014(a) and 2016 for Authority to Retain and Employ Munger, Tolles & Olson LLP as Attorneys for Certain Matters for the Debtors Effective as of the Peittion Date* [Docket No. 1167] (the "**Retention Application**").  The declaration of Janet Loduca was filed on April 1, 2019 [Docket No. 1169] in support of the Retention Application.  The declaration of Henry Weissmann was filed in support of the Retention Application on April 1, 2019 [Docket No. 1168], as amended and supplemented by the amended declaration filed on April 2, 2019 [Docket No. 1181], and first and second supplemental declarations of Henry Weissmann filed on April 10, 2019 [Docket No. 1301] and June 14, 2019 [Docket No. 2522] (collectively, the "**Weissmann Declarations**").

The *Order Authorizing Debtors Pursuant to 11 U.S.C. § 327(e) and Fed. R. Bankr. P. 2014(a) and 2016 for Authority to Retain and Employ Munger, Tolles & Olson LLP as Counsel for Certain Matters for the Debtors Effective as of the Petition Date* [Docket No. 1677] was entered on April 25, 2019 (the "**Retention Order**").  The Retention Order is attached hereto as **Exhibit A.**  The Retention

Order authorizes MTO to provide services as described in the Retention Application and Weissmann Declarations (the "**Specific Matters**"), including:

    a.  Advising and representing the Debtors with respect to federal, state, and local laws and regulations as they relate to (1) wildfires and the effects of wildfire liabilities on the Debtors' businesses; (2) the relative jurisdiction of the California Public Utilities Commission ("**CPUC**"), the Federal Energy Regulatory Commission ("**FERC**"), and federal courts, including the Bankruptcy Court; and (3) motions and other negotiations and proceedings in the chapter 11 cases, and other legal proceedings, that may affect the interests of the CPUC and/or parties in CPUC proceedings involving the Debtors, including matters that may affect or relate to the Debtors' management, governance, structure, and rates;

    b.  Advising and representing the Debtors in CPUC Proceedings, including but not limited to: (a) R.19-01-006, Order Instituting Rulemaking to Implement Public Utilities Code Section 451.2 Regarding Criteria and Methodology for Wildfire Cost Recovery Pursuant to Senate Bill 901 ("**CPUC Proceeding R.19-01-006**"); (b) I.15-08-019, Order Instituting Investigation on the Commission's Own Motion to Determine Whether Pacific Gas and Electric Company and PG&E Corporation's Organizational Culture and Governance Prioritize Safety ("**CPUC Proceeding I.15-08-019**"); (c) A.19-02-016, Application of Pacific Gas and Electric Company for a Waiver of the Capital Structure Condition ("**CPUC Proceeding A.19-02-016**"); (d) A.18-11-001, Application of Pacific Gas and Electric Company to issue, sell, and deliver one or more series of Debt Securities and to guarantee the obligations of others in respect of the issuance of Debt Securities; to execute and deliver one or more indentures; to sell, lease, assign, mortgage, or otherwise dispose of or encumber utility property; to issue, sell and deliver in one or more series, cumulative Preferred Stock -- $25 Par Value, Preferred Stock -- $100 Par Value, Preference Stock or any combination thereof; to utilize various debt enhancement features; and enter into interest rate hedges ("**CPUC Proceeding A.18-11-001**"); (e) A.18-10-003, Application of Pacific Gas and Electric Company to

increase its authority to finance short-term borrowing needs and procurement-related collateral costs by $2.0 billion to an aggregate amount not to exceed $6.0 billion ("**CPUC Proceeding A.18-10-003**"); and (f) any other related or similar CPUC proceeding or other CPUC proceeding arising from the matters for which MTO is representing the Debtors;

c. Advising and representing the Utility regarding its rights and obligations under various power purchase agreements, including in connection with *NextEra Energy, Inc., et al. v. Pacific Gas and Electric Company*, FERC Docket No. 19-35-000, and *PG&E Corp. et al. v. Federal Energy Regulatory Commission*, Adv. Proc. No. 19-03003 (N.D. Cal.); advising and representing the Utility on any appeal from these matters and, potentially, as an amicus curiae in other proceedings involving similar legal issues;

d. Advising the Debtors regarding compliance with laws and regulations governing public utilities, including Division 1, Part 1 of the California Public Utilities Code and the CPUC's affiliate transaction rules (including Decision 06-12-029 and related decisions);

e. Advising and representing the Debtors as necessary and appropriate with respect to potential actions by state government actors, including the legislature and the CPUC, that may affect or relate to the Debtors' reorganization, plan, and operations, including with respect to liability standards, insurance and related cost-spreading regimes, recovery of costs in rates and the Debtors' management, governance and structure;

f. Advising and representing the Debtors with respect to issues arising under California law that may affect or relate to the Debtors' reorganization, plan and operations; California corporate law including but not limited to fiduciary duties and opinions regarding due authority; California law governing corporate forms; the California Public Records Act;

g. Advising and representing the Debtors with regard to potential criminal, civil, and administrative liability in connection with the 2017 and 2018 Northern California wildfires, including:

     i.   Advising and representing the Debtors in civil or administrative proceedings relating to the 2017 and 2018 Northern California wildfires;

    ii.   Advising and representing the Debtors concerning the Butte County Settlement;

   iii.   Coordinating with Debtors' counsel in civil actions and administrative proceedings arising from wildfires to provide advice regarding potential impact on and coordination with the Debtors' response to and positions in the criminal investigations and any resulting prosecutions;

   iv.   Advising and representing the Debtors and coordinating with other counsel in connection with any possible or proposed resolutions or settlements of criminal, civil, or administrative liability arising from California wildfires; and

h.   Providing all other necessary legal services for the Debtors, as related to the above matters, in connection with the above captioned chapter 11 cases, including fact investigation, legal researching, briefing, argument, discovery, reorganization, plan and disclosure statement matters, appearance and participation in hearings, and communications and meetings with parties in interest.

The terms of MTO's engagement are detailed in the engagement letters attached as Exhibits 1 through 6 to the initial Weissmann Declaration.

**C.    No Adverse Interest with Respect to the Specific Matters**

To the best of the Debtors' knowledge and as disclosed in the Weissmann Declarations, MTO does not hold or represents an interest adverse to the Debtors or their estates with respect to the Specific Matters.  MTO may have in the past represented, may currently represent, and likely in the future will represent parties in interest in connection with matters unrelated to the Debtors in these chapter 11 cases. In the Weissmann Declarations, MTO disclosed its connections with parties in interest that it has been able to ascertain using its reasonable efforts.  MTO will update its disclosures as appropriate if MTO becomes aware of relevant and material new information.

MTO performed the services for which it is seeking compensation on behalf of the Debtors and their estates, and not on behalf of any committee, creditor, or other entity.

Except to the extent of the advance payments paid to MTO that MTO previously disclosed to

this Court in the Weissmann Declarations, MTO has received no payment and no promises for payment from any source other than the Debtors for services provided or to be provided in any capacity whatsoever in connection with these chapter 11 cases.

Pursuant to Bankruptcy Rule 2016(b), MTO has not shared, nor has MTO agreed to share (a) any compensation it has received or may receive with another party or person other than with the partners, counsel, and associates of MTO or (b) any compensation another person or party has received or may receive.

### Summary of Compliance with Interim Compensation Order

This Fee Application has been prepared in accordance with the Interim Compensation Order.

MTO will file a consolidated monthly fee statement for January 29, 2019 through May 31, 2019 shortly after this Fee Application has been filed.

MTO seeks interim compensation for professional services rendered to the Debtors during the Fee Period in the amount of $6,653,996.00, which includes the 20% holdback under the Interim Compensation Order, and reimbursement of actual and necessary expenses incurred in connection with providing such services in the amount of $99,363.65. During the Fee Period, MTO attorneys and paraprofessionals expended a total of 9,244.60 hours for which compensation is requested.

As disclosed in the Weissmann Declarations, as of the Petition Date, the retainer balance was $790,678.66. MTO has reconciled the final fees and expenses incurred before the Petition Date. The total fees and expenses incurred but unpaid as of the time of the filing of these cases was $39,933.05. Per the Retention Order, the retainer has been applied to those fees and expenses, and the balance of $750,745.61 is being held by MTO until the conclusion of its engagement and applied to any fees or expenses awarded in a final fee application, with the remaining balance, if any, to be returned to the Debtors.

### Fees and Expenses Incurred During the Fee Period

**A.    Customary Billing Disclosures**

MTO's hourly rates are set at a level designed to compensate MTO fairly for the work of its attorneys and paraprofessionals and to cover overhead and operating expenses. The hourly rates and corresponding rate structure utilized by MTO in these chapter 11 cases are the same as the hourly rates

and corresponding rate structure MTO uses for other corporate, regulatory, litigation, and restructuring related matters, whether in court or otherwise, regardless of whether a fee application is required. MTO's rates and rate structure reflect the complex and time sensitive nature of the matters handled by MTO. For the convenience of the Bankruptcy Court and all parties in interest, attached hereto as **Exhibit B** is MTO's budget and staffing plan for this Interim Fee Period, and attached hereto as **Exhibit C** is a summary of blended hourly rates for timekeepers who billed to the Debtors during the Fee Period and a comparison to blended hourly rates on other matters.

**B.      Fees Incurred During the Fee Period**

MTO maintains computerized records of the time expended to render the professional services required by the Debtors and their estates. For the convenience of the Court and all parties in interest, attached hereto as **Exhibit D** is a summary of fees incurred and hours expended during the Fee Period, setting forth the following information:

- the name of each attorney and paraprofessional for whose work on these chapter 11 cases compensation is sought;

- each attorney's year of bar admission and area of practice concentration;

- the aggregate time expended and fees billed by each attorney and each paraprofessional during the Interim Fee Period;

- the hourly billing rate for each attorney and each paraprofessional at MTO's current billing rates; and

- the number of rate increases since the inception of the cases (of which there were none).

**C.      Expenses Incurred During the Fee Period**

MTO maintains a record of expenses incurred in the rendition of the professional services required by the Debtors and their estates and for which reimbursement is sought. For the convenience of the Court and all parties in interest, attached hereto as **Exhibit E** is a summary, setting forth the total amount of reimbursement for the Fee Period with respect to each category of expenses for which MTO is seeking reimbursement.

### Summary of Legal Services Rendered During the Fee Period

Below is a summary, by subject matter categories (each, a "Matter Category") that MTO established for these chapter 11 cases in consultation with the Debtors, of the fees and hours billed for each Matter Category in the Fee Period (see **Exhibit F**):[2]

| Matter Number | Project Category Description | Hours | | Total Compensation | | Expenses | Total |
|---|---|---|---|---|---|---|---|
| | | Budgeted | Billed | Budgeted | Billed | | |
| 020 | Legislative | 505 | 472.20 | $428,425 | $402,118.00 | - | $402,118.00 |
| 021 | Non-Bankruptcy Litigation – Criminal Wildfire Investigation | 8,270 | 6,432.70 | $5,605,275 | $4,339,428.00 | - | $4,339,428.00 |
| 022 | Non-Working Travel (hours at ½ amount budgeted/recorded by timekeeper) | 160 | 217.50 | $164,125 | $200,770.50 | - | $200,770.50 |
| 023 | Power Purchase Agreements (including Adversary Proceedings) | 215 | 299.90 | $233,150 | $213,429.50 | - | $213,429.50 |
| 025 | Regulatory | 1,880 | 1,691.10 | $1,504,875 | $1,396,705.00 | | $1,396,705.00 |
| 026 | MTO Retention and Fee Applications | 245 | 131.20 | $218,600 | $101,545.00 | - | $101,545.00 |
| **Total** | | **11,275** | **9,244.60** | **$8,154,450** | **$6,653,996.00** | **$99,363.65** | **$6,753,359.65** |

A schedule setting forth a description of the Matter Categories utilized in this case, the number of hours expended by MTO partners, associates and paraprofessionals by Matter Category, and the aggregate fees associated with each Matter Category is attached hereto as **Exhibit G**. In addition, MTO's computerized records of time expended and expenses incurred providing professional services to the Debtors and their estates are attached hereto as **Exhibit H**.

The following paragraphs provide summary descriptions of the most significant services rendered by MTO during the Fee Period. The descriptions are organized by Matter Category.

### Legislative Issues [Matter No. 020]

Total Fees:     $402,118.00
Total Hours:   472.20

This Matter Category represents time spent by MTO attorneys and paraprofessionals related to legislative issues being considered by the state of California. This work included review, analysis,

---

[2]     For each Matter Category, the chart also shows the amount budgeted by MTO in accordance with the staffing and budget plan provided to the Debtors as required under the guidelines adopted by the Office of the United States Trustee.

research, and revision of proposed legislation related to wildfire liabilities and utility entities and their affiliates. This work included advising the Debtors on these matters and representing the interests of the Debtors with the state of California and other stakeholders.

**Non-Bankruptcy Litigation / Wildfire (Criminal) [Matter No. 021]**

Total Fees:   $4,339,428.00
Total Hours:  6,432.70

This Matter Category relates to criminal investigations and potential criminal liability in connection with the 2017 and 2018 Northern California wildfires. This work includes extensive investigation and other discovery by MTO of the Debtors and communications with district attorneys offices within California and the Office of the Attorney General of the State of California. It also involves the provision of information and documents to those offices, including in response to specific requests for documents and other information. The investigation and discovery have required extensive travel by MTO and numerous interviews of the Debtors' personnel and former personnel and review of numerous records and documents. This matter category also includes time spent performing legal research and analysis and advising the Debtors on these matters and the October 2018 settlement with Butte County relating to the 2017 wildfires.

**Non-Working Travel [Matter No. 022]**

Total Fees:   $200,770.50
Total Hours:  217.50

This Matter Category reflects non-working travel time of MTO attorneys in providing services to the Debtors. This includes travel to Nothern California and other locations for board meetings, court hearings, and various interviews, data or document collection, and other meetings related to the Specific Matters. The amount requested reflects a reduction of one half of the hours recorded by MTO timekeepers.

**Power Purchase Agreements (including Adversary Proceedings) [Matter No. 023]**

Total Fees:   $213,429.50
Total Hours:  299.90

This Matter Category includes time spent by MTO attorneys and paraprofessionals providing services related to analysis of issues regarding potential appeals of disputes over the potential rejection of power purchase agreements in the Debtors' cases. This work has included anlaysis of legal issues, precedent, and the pending adversary proceedings involving counterparties to these agreements and FERC, as well as strategic advice to the Debtors regarding these matters.

### Regulatory Issues [Matter No. 025]

Total Fees:    $1,396,705.00
Total Hours:  1,691.10

This Matter Category includes time spent by MTO attorneys and paraprofessionals regarding regulatory matters before the CPUC. This work has involved a number of CPUC matters, including those referenced above under Specific Matters, the customer harm threshold proceeding,[3] and the safety culture investigation. MTO spent time reviewing filings and actions by the CPUC as well as other parties, conducting research on the issues raised by the CPUC, and preparing submissions and responses by the Debtors. MTO has also provided advice to the Debtors regarding these matters.

### Retention / Billing / Fee Applications: MTO [Matter No. 026]

Total Fees:    $101,450.00
Total Hours:  131.20

This Matter Category reflects time spent by MTO attorneys and paraprofessionals related to the retention of MTO by the Debtors. This category includes time spent preparing the Retention Application, and filing an amended, and two supplemental declarations in support of the Retention Application. This category also includes time spent preparing the budget and staffing plans as required by the U.S. Trustee and working with the Debtors to establish the Matter Categories, and budget and billing procedures required by the Debtors, and preparing monthly and interim fee application exhibits.

### Actual and Necessary Expenses Incurred by MTO

As set forth in **Exhibit H** attached hereto, and as summarized in **Exhibit E** attached hereto, MTO has incurred a total of $99,363.65 in expenses on behalf of the Debtors during the Fee Period.

---

[3] MTO will record time related to the customer harm proceeding under Matter Category 21 beginning with time recorded on or after July 1, 2019 per discussion with the Debtors.

These charges are intended to reimburse MTO's direct operating costs, which are not incorporated into the MTO hourly billing rates. MTO charges external copying at the provider's cost without markup. Only clients who actually use services of the types set forth in **Exhibit H** of this Fee Application are separately charged for such services.

### **Client Review of Billing Statements**

Pursuant to the Local Guidelines, a cover letter was sent to the Debtors with a copy of the Fee Application concurrently with the filing of this Fee Application. The letter invites the Debtors to discuss with MTO and/or the U.S. Trustee any objections, concerns, or questions the Debtors may have with regard to the requested compensation and reimbursement set forth in the Fee Application. A copy of the transmittal letter is attached hereto as **Exhibit I**.

### **Reasonable and Necessary Services Provided by MTO**

**A.      Reasonable and Necessary Fees and Expenses Incurred in Providing Services to the Debtors**

MTO respectfully submits that the professional services provided to the Debtors during the Fee Period were reasonable, necessary, and appropriate to the administration of these chapter 11 cases and related matters. MTO makes every reasonable effort to ensure that travel meals, hotel rates, and airfares are reasonable and appropriate expenses for which to seek reimbursement.

MTO regularly reviews its bills to ensure that the Debtor is only billed for services that were actual and necessary and, where appropriate, prorates expenses.

### **MTO's Requested Compensation and Reimbursement Should be Allowed**

Section 330 of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered . . . and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1). Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (a)      the time spent on such services;
>
> (b)      the rates charged for such services;

(c)     whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(d)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(e)     with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(f)     whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

In determining the amount of allowable fees under Bankruptcy Code section 330(a), courts are to be guided by the same "general principles" as are to be applied in determining awards under the federal fee-shifting statutes, with "some accommodation to the peculiarities of bankruptcy matters." *Burgess v. Klenske* (*In re Manoa Finance Co., Inc.*), 853 F.2d 687, 691 (9th Cir. 1988). In assessing the propriety of an award of attorneys' fees, twelve factors relevant to determining such fees were identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974), a Title VII class action case under the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq., and *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976): (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the service properly, (4) the preclusion of other employment by the professional due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the professionals, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *See American Benefit Life Ins. Co. v. Baddock* (*In re First Colonial Corp. of America*), 544 F.2d 1291 (5th Cir. 1977) (*Johnson* criteria applicable in bankruptcy cases.).

In making a fee award, bankruptcy courts should consider the circumstances of the case, and

the manner in which professional services were performed, as well as the results achieved. *Roberts,*
*Sheridan & Kotel, P.C. v. Bergen Brunswig Drug Co. (In re Mednet MPC Corp.)*, 251 B.R. 103, 108
(9th Cir. BAP 2000). When determining whether the services were actual and necessary, "a
professional need demonstrate only that the services were reasonably likely to benefit the estate at the
time rendered." *Id.* at 108. Thus, while it is a relevant factor, § 330(a) "does not require that the
services result in a material benefit to the estate in order for the professional to be compensated." *Id.*

MTO respectfully submits that the services for which is seeks compensation in this Fee
Application were, at the time rendered, beneficial to the Debtors and necessary to the administration of
these chapter 11 cases. MTO believes that it performed the services for the Debtors economically,
effectively, and efficiently, and the results obtained benefited not only the Debtors, but were necessary
for the administration of the Debtors' cases. MTO further submits that the compensation requested
herein is reasonable in light of the nature, extent and value of such services to the Debtors, and all
parties in interest and satisfy the *Johnson* factors.

During the First Interim Fee Period, MTO's hourly billing rates for attorneys ranged from
$460.00 to $1,500.00. **Exhibit C** contains information regarding the blended hourly rates for MTO
professionals and paraprofessionals who rendered services to the Debtors in the First Interim Fee
Period. The hourly rates and corresponding rate structure utilized by MTO in these chapter 11 cases
are equivalent to the hourly rates and corresponding rate structure used by MTO for corporate,
regulatory, litigation, and restructuring related matters, whether in court or otherwise, regardless of
whether a fee application is required. MTO strives to be efficient in the staffing of matters. These
rates and the rate structure reflect that such matters are typically national in scope and involve great
complexity, are of significant and material importance to our clients, and involve severe time
pressures—all of which are present in these chapter 11 cases. MTO believes that its hourly rates are
consistent with the rates charged elsewhere by comparable professionals, including those retained in
these chapter 11 cases.

In sum, MTO respectfully submits that the professional services provided by MTO on behalf of
the Debtors and their estates during these chapter 11 cases were necessary and appropriate given the
complexity of these chapter 11 cases, the time expended by MTO, the nature and extent of MTO's

services provided, the value of MTO's services, and the cost of comparable services outside of bankruptcy, all of which are relevant factors set forth in section 330 of the Bankruptcy Code. Accordingly, MTO respectfully requests approval of the compensation sought herein.

### Statement Regarding United States Trustee Guidelines

The following information is provided in response to information requested in the guidelines promulgated by the U.S. Trustee:

> **Question:** Did MTO agree to any variations from, or alternatives to, MTO's standard or customary billing arrangements for this engagement?
>
> **Response:** No.
>
> **Question:** If the fees sought in this Fee Application as compared to the fees budgeted for the time period covered by this Fee Application are higher by 10% or more, did you discuss the reasons for the variation with the Debtors?
>
> **Response:** The fees sought are not higher by 10% or more than budgeted.
>
> **Question:** Have any of the professionals whose fees are sought in the Fee Application varied their rate based on the geographic location of the Debtors chapter 11 cases?
>
> **Response:** No.
>
> **Question:** Does the Fee Application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application). If so, please quantify by hours and fees.
>
> **Response:** MTO is seeking compensation with respect to the approximately 31.7 hours and $21,747.00 in fees spent reviewing or revising time records and preparing, reviewing, and revising invoices for privileged or confidential information during the First Interim Fee Period.
>
> **Question:** If the Fee Application includes any rate increase since retention, (i) Did your client review and approve those rate increases in advance?; and (ii) Did your client agree when retaining the law firm to accept all future rate increases?
>
> **Response:** The Fee Application does not include any rate increases since retention.

### Reservation of Rights

It is possible that some professional time expended or expenses incurred during the Interim Fee Period are not reflected in this Application. MTO reserves the right to include such amounts in future

fee applications.

## **Notice**

The Debtors will provide notice of this Fee Application in accordance with the Interim Compensation Order.

## **No Prior Request**

No prior application for the relief requested herein has been made to this or any other court.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

WHEREFORE, MTO respectfully requests that the Bankruptcy Court enter an order: (a) awarding MTO compensation for professional and paraprofessional services provided during the Interim Fee Period in the amount of $6,653,996.00, and reimbursement of actual, reasonable and necessary expenses incurred in the Interim Fee Period in the amount of $99,363.65; (b) authorizing and directing the Debtor to remit payment to MTO for such fees and expenses; and (c) granting such other relief as is appropriate under the circumstances.

Dated: July 15, 2019                          Respectfully submitted,

                                              MUNGER, TOLLES & OLSON LLP


                                              By:  /s/ Bradley Schneider
                                                    Bradley Schneider

                                              *Attorneys for Debtors and Debtors in Possession*